### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**YILVER PONCE**                                              **CIVIL ACTION**

**VERSUS**                                                    **NO.:    15-1179**

**TIMOTHY KEITH, WARDEN**                                     **SECTION: "E"(5)**

### SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

A. *State-Court Proceedings*

Petitioner, Yilver Ponce, is a convicted inmate incarcerated in the Winn Correctional Center in Winnfield, Louisiana.    Ponce was charged with fourth-offense operating a motor vehicle while intoxicated in violation of Louisiana Revised Statute 14:98.[1]    Following a two-

---

[1]  State Rec., Vol. 1 of 4, Twenty-Second Judicial District, Parish of St. Tammany, Bill of Information.

day trial, on August 28, 2009, a jury found him guilty as charged.[2]    On October 20, 2009, he

was sentenced to fifteen (15) years imprisonment at hard labor.[3]

On direct appeal, Ponce raised two assignments of error: (1) the State failed to

sufficiently prove that the deputy was certified to operate the intoxilyzer on the date of the

arrest as required under Louisiana law and (2) the sentence imposed was excessive. On

March 25, 2011, the Louisiana First Circuit Court of Appeal affirmed the conviction and

sentence.[4]    On November 14, 2011, the Louisiana Supreme Court denied his related writ

application.[5]

On February 20, 2012, Ponce filed a motion for concurrent sentences with the state

district court.[6]    That motion was denied on February 29, 2012.   On June 28, 2012, Ponce

---

[2]  State Rec., Vol. 1 of 4, Minute Entry, 8/28/09; Jury Verdict; *see also* State Rec., Vol. 2 of 4, Trial Transcript (August 28, 2009), p. 37.

[3]  State Rec., Vol. 1 of 4, Minute Entry, 10/20/09, *see also* State Rec., Vol. 2 of 4, Transcript of Sentencing, (October 20, 2009), p. 4.

[4]  *State v. Ponce*, 2010-KA-1446, 2011 WL 2520184 (La. App. 1st Cir. 3/25/11). *See* State Rec., Vol. 3 of 4 (unpublished opinion).

[5]  *State v. Ponce*, 2011-KO-0833 (La. 11/14/11), 75 So.3d 938.

[6]  State Rec., Vol. 3 of 4, Motion for Concurrent Sentences.   Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."   *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).   If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed.   In those instances where no signature date appears on a document and no other evidence is

submitted an application for post–conviction relief to the state district court.[7]    In that

application, he raised three grounds for relief:    (1) he was denied the right to an interpreter

at trial, (2) he was denied the right to call witnesses in his defense, and (3) trial counsel was

ineffective for failing to investigate or discuss the case with him.    The district court denied

relief on July 20, 2012.[8]    Ponce filed a notice of intent to seek writs and was given until

August 20, 2012 to file his writ application.    A motion for extension of time was

subsequently granted with a return date of September 20, 2012.    On September 13, 2012,

Ponce filed a related writ application in the Louisiana First Circuit Court of Appeal.    The

court of appeal denied relief on November 19, 2012.[9]    On December 8, 2012, Ponce filed a

supervisory writ application with the Louisiana Supreme Court.    The Supreme Court

denied relief on May 24, 2013.[10]

On July 24, 2013, Ponce filed a motion to correct his unconstitutional conviction and

sentence, in which he raised six claims for relief:    (1) Trial counsel was ineffective and, as

---

available, the Court will look to the file-stamp placed on the document by the clerk of court.
The motion contains a certificate of service signed and dated February 20.

[7]  *Id.*, Uniform Application for Post-Conviction Relief signed and dated June 28, 2012.

[8]  *Id.*, District Court Order denying post-conviction relief (July 20, 2012).

[9]  State Rec., Vol. 4 of 4, Louisiana First Circuit Application for Writs, No. 2012-KW-1524 signed September 13, 2012; *State v. Ponce*, 2012-KW-1524 (La. App. 1st Cir. Nov. 19, 2012) (unpublished writ ruling).

[10]  State Rec., Vol. 4 of 4, Louisiana Supreme Court Application for Writs, No. 12-KH-2724 signed December 8, 2012; *State ex rel. Ponce v. State*, 12-KH-2724 (La. 5/24/13), 116 So.3d 660.

a consequence, he was denied a fair trial when the trial court failed to grant his request for an interpreter; (2) the State's expert failed to prove his certification to administer the intoxilyzer test to support the test's introduction as proof of intoxication; (3) the appellate court's ruling on direct appeal denied him due process; (4) the State relied on invalid predicate guilty-plea convictions; (5) trial counsel was ineffective for failing to preserve errors for appeal and (6) appellate counsel was ineffective for failing to assert on appeal that trial counsel was ineffective.[11]    On July 30, 2013, the state district court found the claims repetitive and denied relief.[12]

On August 19, 2013, Ponce filed a related writ application with the Louisiana First Circuit.    The Louisiana First Circuit denied his motion for leave to supplement and, on November 21, 2013, issued a ruling denying the writ application.[13]    On June 11, 2014, Ponce filed a related supervisory writ application with the Louisiana Supreme Court.    The Louisiana Supreme Court denied relief on April 2, 2015.[14]

---

[11] State Rec., Vol. 3 of 4, Motion to Correct Unconstitutional Conviction and Sentence.

[12] *Id.*, District Court Order denying post-conviction relief signed July 30, 2013.

[13] *See* State Rec., Vol. 4 of 4, Application for Writs No. 13-KW-1455; State Rec., Vol. 3 of 4, *State v. Ponce*, 2013-KW-1455 (La. App. 1st Cir. Nov. 21, 2013) (unpublished rulings).

[14] State Rec., Vol. 4 of 4, Louisiana Supreme Court Application for Writs, No. 2014-KH-1269; *State ex rel. Ponce v. State*, 2014-KH-1269 (La. 4/2/15), 163 So.3d 789.

B. *Federal* Habeas *Petition*

On April 7, 2015, Ponce filed his federal application for *habeas corpus* relief.[15]  In his petition, Ponce asserts the following grounds for relief: (1) trial counsel was ineffective and he was denied a fair trial when the trial court denied his request for an interpreter, (2) the State's expert failed to prove that he was certified to administer the intoxilyzer as required under Louisiana law, (3) the appellate court's ruling on direct appeal denied him due process, (4) his sentence was improperly enhanced, (5) trial counsel was ineffective for failing to preserve errors for appeal and (6) appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on appeal.    The State filed a response and memorandum in opposition arguing that the federal application is untimely and that all of the claims have not been exhausted in the state courts.    The State also argued that the two properly exhausted claims fail on the merits.[16]  Ponce filed a reply to that response.[17]

On June 28, 2016, the undersigned recommended a dismissal of his federal petition without prejudice for failure to exhaust his state-court remedies on all claims for relief. That recommendation was adopted by order issued on August 5, 2016.    Ponce thereafter sought to file an amended petition in which he withdrew his four unexhausted claims and

---

[15]  Rec. Doc. 4, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus signed and dated April 7, 2015.

[16]  Rec. Docs. 13, 14.

[17]  Rec. Doc. 15.

chose to proceed only with his two exhausted claims.    On September 1, 2016, the District

Judge granted Ponce's motion to amend the petition and referred the matter to the this Court

for preparation of a supplemental report and recommendation addressing the merits of the

exhausted claims for relief.

*Facts*

The following facts were established at trial and summarized by the Louisiana First

Circuit Court of Appeal:

> On February 25, 2008, at approximately 11:30 p.m., St.
> Tammany Parish Sheriffs Office Deputy Steve Chiasson
> investigated a report of a white van with two males inside that
> had been parked for some time on Louisiana Highway 36, near
> Covington. While riding eastbound on Highway 36, Deputy
> Chiasson noticed a white vehicle he believed to be a Ford
> Explorer backing up with its headlights on. Deputy Chiasson
> observed two males sitting in the front seats of the vehicle. As
> soon as Deputy Chiasson slowed down to pass the vehicle, the
> driver drove off quickly, prompting the deputy to immediately
> turn around and follow the vehicle. When Deputy Chiasson
> pulled in behind the vehicle, it made an immediate left turn into
> a trailer park. Deputy Chiasson parked at an angle behind the
> vehicle. He had a clear view of the passenger, but not the driver.
> Deputy Chiasson used his public address system to order the
> driver out of the vehicle. Deputy Chiasson identified the
> defendant as the person who exited the vehicle.

> Deputy Chiasson testified that when the defendant exited the
> vehicle, he was swaying, and when the defendant arrived at the
> deputy's vehicle, the deputy could smell alcohol on the
> defendant's breath and person. Deputy Chiasson stated that he
> asked the defendant for his driver's license, registration, and
> proof of insurance, and asked him if anyone else was in the
> vehicle. According to Deputy Chiasson, the defendant replied
> that the documents were in the vehicle and that there was a

passenger in the vehicle. The officer again used the public address system to order the passenger out of the vehicle, who complied and came over to the front of the vehicle. Deputy Chiasson then went to the passenger side of the vehicle to get the paperwork, and was told by the defendant that he did not have his license. According to Deputy Chiasson, while standing on the side of the vehicle, he observed two open beer bottles on the floor, asked the defendant whether they were his, and the defendant answered affirmatively. At the scene, the defendant did not indicate that anyone else had been driving the vehicle.

The defendant subsequently failed the horizontal-gaze nystagmus and one-leg stand field sobriety tests, and he refused to perform the walk-and-turn test. Deputy Chiasson testified that the defendant told him he had a couple of beers, that the defendant had glassy eyes, and that the defendant's speech was slurred. Believing defendant to be intoxicated, Deputy Chiasson arrested the defendant and advised him of his Miranda rights. At 12:36 a.m., the defendant's breath registered .161 on the Intoxilyzer 5000.

The defendant testified at trial. He conceded, in addition to the three predicate DWI offenses charged against him, in case # 320427, on June 21, 2000, he pled guilty to DWI; and in case # 400717, on August 19, 2005, he pled guilty to DWI, fourth offense. He claimed he lived in the mobile home on Highway 36 with two of his children and their mother. He indicated the vehicle in question was his cousin's Ford Expedition, that he had been a passenger in the vehicle, and denied having driven the vehicle that night. The defendant testified that after the police arrived, he exited the truck to go into his trailer, then went to talk to one of the officers to see what was going on. He denied that he had been drinking on the night in question.[18]

---

[18] *State v. Ponce*, 2010-1446, 2011 WL 2520184, at *1-2 (La. App. 1st Cir. 3/25/11) (footnote omitted); State Rec., Vol. 3 of 4 (unpublished opinion).

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court

confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA

prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Analysis*

A. *Denial of an Interpreter and Ineffective Assistance of Trial Counsel*

Ponce claims that "his right to effective assistance of counsel and a fair trial was violated when the trial court denied defendant Ponce an interpreter due to his lack of understanding of the English language."[19]    Although he alleges ineffective assistance, Ponce admits that his attorney requested an interpreter on his behalf.    Ponce submits that the request was denied based primarily upon the state prosecutor's false representations that he could read and understand English.[20]    The claim was considered and denied by the state courts on post-conviction review without stated reasons for the ruling.

The record reflects that for the first time on the morning of trial Ponce requested an interpreter to assist him at trial.    Defense counsel learned that an interpreter was not available and moved for a continuance.    The State objected to a continuance, arguing that the record, specifically prior guilty-plea transcripts, showed that Ponce could effectively communicate in English and understand the proceedings.    The trial court agreed and denied the defense's motion for a continuance.    Defense counsel initially stated he would

---

[19]  Rec. Doc. 4, p. 8.

[20]  Although he also suggests the trial court denied the motion because he was indigent and presumably could not afford to pay for an interpreter, the record contradicts this.    There is no mention in the record of any such discussion.

seek writs and requested a 15-day stay of the matter.    The trial court allowed him until five

o'clock to file writs, but declined to stay the proceedings.    Given that ruling, defense

counsel stated that the defense would proceed with trial and simply lodge an objection to

the ruling, and have an interpreter for the afternoon proceedings if possible.[21]    The trial

court agreed to use an interpreter if defense counsel could locate one, but that opportunity

apparently did not materialize.    Ponce testified in his own defense at trial without an

interpreter and without any apparent difficulty.

　　　　Ponce cites Louisiana Code of Criminal Procedure article 25.1, which affords a trial

court the discretion to appoint an interpreter for a non-English-speaking person after

consulting with the person and his counsel.    Louisiana law places the appointment of an

interpreter within the sound discretion of the trial judge if a defendant proves his inability

to understand the proceedings.    *State v. Lopes*, 805 So.2d 124, 128 (La. 2001).    The State

predictably argues that Ponce's previous representations under oath that he could speak and

understand English support the trial court's factual finding that Ponce had the ability to

---

[21]    The trial court had already ruled, "[s]o for me to say at this time, at this juncture that we were ready to go to trial, that the defendant needs an interpreter is indeed stretching the point.    And the court at this time denies your request for a continuance, Mr. Burns… The Court will allow you until five o'clock today to file your writs.    The Court denies your stay."    Defense counsel responded, "That's fine, Judge.    One more thing.    Blanca is in here and I am thinking out loud that I saw a conversation between she and Janet Talley and that they might be able to have the interpreter here this afternoon.    And what I would like to do, Judge, is just suspenders and a belt if they could bring him and if they can't, they can't. But let's move on with the trial for the purpose of picking a jury.    But if he could, that would be a nice thing to be an aid and an assistant to my client."    State Rec., Vol. 1 of 4, Trial Transcript, pp. 6-7.

communicate with counsel and the courts effectively in English and did not require an interpreter.    The State is correct.

The bottom line is that an ineffective-assistance-of-counsel argument based on this premise is flawed for two reasons.    First, counsel actually made the request for an interpreter and was denied.    Second, the record establishes beyond any doubt that Ponce did not require an interpreter.    His prior plea colloquy as well as the one in this case belie any suggestion that Ponce can neither understand nor speak English.

Moreover, to the extent Ponce may argue that the trial court violated Louisiana law in denying his request for an interpreter, that claim is not cognizable on federal *habeas* review.    A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).    This Court's review is limited to errors of federal constitutional dimension.

Likewise, Ponce has not shown that the factual basis underlying the state court's denial was clearly erroneous or that the denial of an interpreter was contrary to or an unreasonable application of any established Supreme Court law.    The state-court ruling was based upon Ponce's own prior, verbalized and demonstrated express understanding of and ability to communicate in the English language in a court of law without an interpreter. The record shows that in making its determination, the trial court reviewed the transcripts

of Ponce's guilty-plea proceedings held in 2005.[22]    Nevertheless, Ponce argues that a transcript from even earlier criminal proceedings in June 2000, during which he used an interpreter, proves that he did not understand English.    However, those proceedings took place five years before the 2005 proceedings, during which Ponce candidly admitted to the trial judge under oath that he could understand English, and nine years before his trial in this case.    Furthermore, even during those earlier proceedings, Ponce acknowledged he understood some English.    Although he had an interpreter for assistance, the trial court made the following observation on the record:    "I want the record to reflect that Ponce does have an interpreter here for him; although he does understand some English, the interpreter is helping him along and saying everything I'm saying."[23]

In the instant case, the fact that Ponce did not mention his need for an interpreter until the first day of trial, and was able to communicate easily throughout the criminal proceedings with his appointed counsel, plainly supports the ruling that an interpreter was unnecessary.    Likewise, Ponce's testimony in this case only confirmed the past objective indicators of his ability to understand and communicate in English.    The transcript of the proceedings reveals he did not have any difficulty understanding or responding to questions and was able to communicate effectively with counsel for both the defense and the State.

---

[22]    *See* State Rec., Vol. 3 of 4, Transcript of Hearing (August 4, 2005), p. 4; Transcript of Hearing (August 19, 2005), pp. 2-4.

[23]    State Rec., Vol. 3 of 4, Transcript (June 21, 2000), p. 5.

Ponce argues that his test scores and reports while incarcerated reflect his poor command of the English language.     While these may reflect an inability to read and write English, they do not show that his English-speaking skills were not sufficient to meaningfully participate in these proceedings without the assistance of an interpreter.     In fact, he has always maintained that he spoke a little English, which was undoubtedly clear during his testimony at trial.[24]     Federal courts will presume that the factual findings of the state courts are correct absent clear and convincing evidence to the contrary.     28 U.S.C. § 2254(e)(1). Ponce offers no such contrary evidence.

Beyond all this, Ponce cites no controlling Supreme Court authority that recognizes a constitutional right to an interpreter; thus, the state court's failure to appoint one cannot be contrary to clearly established federal law and cannot support a grant of *habeas* relief. "The United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional one."     *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir.2001); *Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir.2012).     The Supreme Court has noted that the appointment of an interpreter "is a matter largely resting in the discretion of the trial court."     *Perovich v. United States*, 205 U.S. 86, 91, 27 S.Ct. 456, 51 L.Ed. 722 (1907); *accord Johnson*, 248 F.3d at 663; *Suarez v. United States*, 309 F.2d 709, 712 (5th Cir.1962). In this case, Ponce has failed to establish that the denial of an interpreter was contrary to any

---

[24]  State Rec., Vol. 2 of 4, Trial Transcript (Ponce-Direct Examination), pp. 211-221.

established Supreme Court law, regardless whether it was attributable to counsel or the court.

While an inability to understand the proceedings due to a language barrier may implicate due-process concerns if that inability renders the trial fundamentally unfair, *see e.g., United States v. Tapia*, 631 F.2d 1207 (5th Cir. 1980), the record in this case demonstrates that Ponce did not face any such obstacle.    He had more than a basic understanding of the English language and clearly enough to communicate sufficiently and participate effectively throughout trial without the need for an interpreter.    He has not shown that he was prejudiced without the aid of an interpreter.    Accordingly, Ponce is not entitled to federal *habeas* relief on this claim.

Similarly, and as mentioned above, Ponce's generic ineffective-assistance claim – presumably based upon these facts – is meritless.    To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."    *Id.* at 690.    A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.    *Id.* at 689.    On federal *habeas* review, moreover, the standard of review is doubly deferential, and

the Court must also determine if the state court reasonably applied *Strickland* to the facts of Ponce's case.    *Harrington v. Richter*, 562 U.S. 86, 105-06 (2011).[25]

Ponce actually advances nothing in support of his ineffective assistance of counsel claim.    His federal application fails to state any factual grounds in support of his general assertion that counsel was ineffective in connection with the denial of an interpreter.    Nor does the record reveal any deficiency in this regard.    In fact, the record here leads the Court to conclude that Ponce's ineffective-assistance claim is no more than a cat's paw for his <u>actual</u> claim that the trial court committed error by failing to grant counsel's request for an interpreter.

Despite having no apparent indication prior to trial that Ponce either needed or desired an interpreter, counsel nonetheless raised the issue on his behalf when prompted by Ponce on the morning of trial.    He also requested a continuance of trial when an interpreter

---

[25] The Supreme Court explained:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
*Id.*

was not available.    When the trial court denied his motion to continue trial, he requested, again unsuccessfully, a stay of the proceedings.    He then successfully prompted the trial court to agree to use an interpreter if one became available later in the day.    The record discloses no deficiency whatsoever on the part of counsel.    There is simply no evidence at all of any language barrier that would require the aid of an interpreter at trial.    Instead, the record shows that Ponce's English skills were sufficient; he was able to communicate effectively and understand the proceedings against him without an interpreter.

In light of his failure to brief the claim and advance reasons in support, Ponce has not asserted even a colorable claim of ineffective assistance of counsel.    Nor could he satisfy even the first *Strickland* prong by establishing that counsel actions fell below objective standards of reasonableness.    Hence, the Court need not reach the prejudice question. The state courts' denial of the claim was neither contrary to, nor an unreasonable application of, *Strickland*.

B. *State's failure of proof as to certification to use intoxilyzer*

Ponce claims that the State failed to prove that Deputy Chiasson was certified to operate the intoxilyzer device, thereby failing to establish sufficient *prima facie* proof of intoxication to support his conviction.    This claim was raised on direct appeal, where Ponce argued that the officer's *current* certification documentation introduced at trial was not sufficient to prove he was similarly certified on the day of the arrest.    The court of appeal held that because no objection was made at trial, the claim was not properly preserved for

appeal under Louisiana Code of Criminal Procedure Article 841 and Code of Evidence Article 103(A)(1).   The Louisiana Supreme Court denied his related writ application without additional stated reasons.   The State argues, and the Court agrees, that the claim is procedurally defaulted.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.   *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).   This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review. *Amos*, 61 F.3d at 338.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.   *Amos*, 61 F.3d at 338.   To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 1127 (2011); *Glover*, 128 F.3d at 902.

Louisiana Code of Criminal Procedure Article 841, Louisiana's contemporaneous-objection rule, prohibits appellate review of errors that were not timely objected to at trial. It is well-settled that the "contemporaneous objection" rule is an "independent and

adequate" state procedural ground which bars federal *habeas corpus* review.    *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977).    The basis for the state court's dismissal of this claim was plainly independent of federal law and relied strictly on state procedural requirements. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Federal courts may look beyond the procedural default only if a petitioner shows cause for the default and actual prejudice, or that the failure to reach the merits of the claim will result in a complete miscarriage of justice.    *Coleman; Wainwright, supra*; *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002), *cert. denied*, 537 U.S. 829, 123 S.Ct. 127, 154 L.Ed.2d 43 (2002).    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.    *Id*. at 486.

Ponce asserts ineffective assistance of trial counsel as the cause of his procedural default.    However, ineffective assistance of counsel may constitute cause for a procedural default only if that ineffective-assistance claim has been presented to the state courts and is not, itself, procedurally defaulted.    *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).    The record in this case reflects that the ineffective assistance of trial counsel claim itself was not properly exhausted in the state

courts and the claim would now be foreclosed on collateral review.    *See* La. Code Crim. Proc. art. 930.8; *Johnson v. Cain*, 639 F. App'x 259 (2016).    Ineffective assistance of trial counsel therefore cannot establish cause for the procedural default of the claim at issue.[26] Because Ponce has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue.    *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Similarly, Ponce has not established that a "fundamental miscarriage of justice" would occur if this Court refuses to consider his claim.    A "fundamental miscarriage of justice" exists where "the constitutional violation has probably resulted in the conviction of one who is actually innocent."    *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106,108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) (quoting *McClesky v. Zant*, 499 U.S. 467, 495,114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993)).    The "miscarriage of justice" exception requires the petitioner to make a "colorable showing of factual innocence."    *Callins*, 89 F.3d at 213 (quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993)).    Ponce has not presented any new reliable evidence to support an assertion of actual innocence that would allow this Court to consider his claim in spite of the procedural default.

---

[26]    *See* Report and Recommendation, Rec. Doc. 18; *see also* Motion to Correct Unconstitutional Conviction and Sentence; First Circuit Writ Application No. 2013-KW-1455; Louisiana Supreme Court Writ Application No. 2012-KH-2724.

For these reasons, Ponce has failed to overcome the procedural bar and his claim that the State failed to lay a proper foundation for admission of the intoxilyzer results should be dismissed as procedurally barred.[27]

## RECOMMENDATION

**IT IS RECOMMENDED** that Ponce's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[28]

---

[27] Even if that claim were properly before the Court for review, his assertion that the evidence was admitted in violation of state law (Louisiana Revised Statute 32:662 *et seq*.) does not present a cognizable ground for federal *habeas* relief. *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (federal *habeas* review does not lie for errors of state law). *Habeas corpus* review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir.2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992).

[28] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this __28th__ day of _____September_____

2016.

_____

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**